The Full Commission has reviewed the record in this case and finds that plaintiff has shown good ground to reconsider the evidence. Having done so, the Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the stipulations set forth by the parties in the November 15, 1994 document entitled "STIPULATIONS" which is incorporated herein by reference and those stipulations entered into at the November 15, 1994 hearing. Subsequent to the November 14, 1994 hearing, the parties stipulated into evidence a letter dated November 22, 1994 from Dr. David Martin.
* * * * * * * * * * *
The Full Commission rejects the findings of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. Plaintiff began working for defendant employer on July 22, 1991 and thereafter worked in the prep and paint department for about one year. In July 1992, he began working as an assembler for defendant employer.
2. Defendant employer's business involves the manufacture of store fixtures, including cash wraps (check-out counters), shelves, display units, tables, hanging racks and other fixtures for retail businesses.
3. Beginning in July 1992 and continuing to December 7, 1992, plaintiff worked as an assembler of various fixtures whose duties included lifting component pieces, weighing from a few pounds to at least 80 pounds, from a cart and putting them on an assembly table where he used glue, staples, screws and hand tools to assemble the component parts into a finished product. The finished products ranged in weight from a few pounds to in excess of 300 pounds. Thereafter, he would either put the finished product on a skid or cart or, if it were heavy, he and a co-employee would put it on a skid or a cart. In particular, depending on the weight of the finished product, plaintiff either lifted or slid it by himself from the table onto a skid or cart or, if it were a heavy product, he obtained the assistance of a co-assembler. The heaviest product which he lifted was some beams which weighted about 400-500 pounds and which he and several co-employees jointly lifted.
4. In September 1992 plaintiff sustained an injury and on December 7, 1992 he underwent carpal tunnel release and decompression of the ulnar nerve at the elbow. In addition, on May 26, 1993 he underwent surgery for impingement syndrome with rotator cuff tear of the left shoulder. This claim was settled when, on April 27, 1994, the Industrial Commission approved a Compromise Settlement Agreement in I.C. 279212.
5. From September 1992 to December 1992 plaintiff was on light duty though he worked as an assembler. Following surgery in May 1993, he returned to work in the prep department and later the shipping department until ultimately returning to the assembly department in mid-January 1994.
6. On January 18, 1994, plaintiff reached maximum medical improvement and was able to return to work on January 19, 1994 at full duty. As a result of his injury, he sustained ten (10) percent permanent partial disability of his left upper extremity.
7. During the period from mid-January, 1994 to February 7, 1994 when plaintiff worked in the assembly department as an assembler, Donald Hildebrand, defendant employer's general manager in charge of the manufacturing division, gave plaintiff the lightest work possible because of his injury and recovery therefrom. As defendant employer ran out of lighter products, plaintiff gradually increased to working with heavier products.
8. On February 7, 1994 while assembling cubes, weighing about 10-15 pounds, plaintiff was requested by a co-assembler to assist with putting an H-stand having a large square base onto a cart and to help take it off the cart at the lamination department. As plaintiff and the co-employee lifted the H-stand off the floor and put it on the cart, plaintiff felt a tearing sensation in his left bicep and shoulder and the onset of sharp, radiating pain from the shoulder to the arm. The H-stand had a square base, weighted about 200-300 pounds, and was awkward to handle.
9. After his surgery in December, 1992, the heaviest product that plaintiff had assembled was a couple of cash wraps weighing about 200-300 pounds. These cash wraps were assembled by him during the brief period from mid-January 1992 to February 7, 1992. Plaintiff did not lift these, however. Rather, he, with the assistance of a co-employee, rotated them on the assembly table in order to put skids under them and then slid them off the table onto the floor, using the force of gravity.
10. The heaviest item that plaintiff had lifted since returning to work after surgery in December 1992 weighed about 75-80 pounds. He did, however, assist some other assemblers move cash wraps during the period from mid-January 1994 to February 7, 1994.
11. Under the circumstances extant herein, plaintiff's assisting with the lifting off the floor of an awkward product weighing 200-300 pounds constitutes an interruption of his regular work routine and the introduction thereby of unusual circumstances likely to result in unexpected consequences. Accordingly, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant employer on February 7, 1994 when he and a co-employee lifted off the floor an awkward product weighing approximately 200-300 pounds.
12. Plaintiff came under Dr. Martin's care on February 8, 1994 for exacerbation of the prior injury to the left shoulder, with pain radiating from plaintiff's left shoulder into the arm. On August 11, 1994, plaintiff was released from Dr. Martin's care with no permanent partial disability due to the injury by accident of February 7, 1994.
13. As a result of the injury by accident of February 7, 1994, plaintiff was rendered unable to earn any wages in any employment from February 8, 1994 through March 7, 1994 and from March 17, 1994 through April 20, 1994. He returned to work for defendant employer on April 21, 1994 and thereafter worked until June, 1994 at which time he quit due to heart problems and exhaustion related thereto.
* * * * * * * * * * *
Based on the foregoing findings of fact the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant employer on February 7, 1994. G.S. § 97-2 (6). In the instant case, unlike that of Pittman v.Inco. Inc., 78 N.C. App. 134 (1985), cert. denied, 315 N.C. 589
(1986), plaintiff had not been performing the activity at issue for two (2) months on a regular basis before the injury.
2. As a result of the injury by accident of February 7, 1994, plaintiff was temporarily totally disabled from February 8, 1994 through March 7, 1994 and from March 17, 1994 through April 20, 1994 for which he is entitled to benefits at the rate of $220.01 per week. G.S. § 97-29.
3. Plaintiff did not sustain any permanent partial impairment as a result of the injury by accident of February 7, 1994. G.S. § 97-31.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
AWARD
1. Subject to attorney fees hereinafter allowed, defendant Nomus Interiors, Inc. shall pay workers' compensation benefits to plaintiff at the rate of $220.01 weekly for the periods from February 8, 1994 through March 7, 1994 and from March 17, 1994 through April 20, 1994. All compensation shall be paid in a lump sum without commutation subject to an attorney's fee hereinafter approved.
2. An attorney's fee of 25 percent of said compensation shall be paid to plaintiff's counsel. This sum shall be paid from the sum due plaintiff and paid directly to plaintiff's counsel.
3. Defendant Nomus Interiors, Inc. shall pay the costs.
IT IS ORDERED that this case is REMOVED from the DOBSON hearing docket.
 S/ ___________________________ WILLIAM L. HAIGH CHIEF DEPUTY COMMISSIONER
CONCURRING:
S/ _______________________ THOMAS J. BOLCH COMMISSIONER
S/ _______________________ COY M. VANCE COMMISSIONER